UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------------X

ALLSTATE INSURANCE COMPANY, ALLSTATE
INDEMNITY COMPANY, ALLSTATE PROPERTY
& CASUALTY INSURANCE COMPANY, and
ALLSTATE FIRE & CASUALTY INSURANCE
COMPANY,

                              Plaintiffs,

    -against-

JOHN STROBECK, M.D., INTEGRATED
DIAGNOSTIC IMAGING & CARDIOLOGY OF
STATEN ISLAND, P.C., HEART LUNG
ASSOCIATES MEDICAL, P.C., JS MARBLE
MEDICAL CARE, P.C., JS RIVER MEDICAL
CARE, P.C., and JOHN DOE DEFENDANTS 1-10,

                             Defendants.

-------------------------------------------------------------------------X

**REPORT AND
RECOMMENDATION**
24-CV-1698 (JS)(SIL)

**STEVEN I. LOCKE, United States Magistrate Judge:**

      Presently before the Court in this insurance fraud action, on referral from the
Honorable Joanna Seybert for Report and Recommendation, is Plaintiffs' Allstate
Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty
Insurance Company, and Allstate Fire & Casualty Insurance Company ("Plaintiffs"
or "Allstate") motion for default judgment pursuant to Rule 55 of the Federal Rules
of Civil Procedure ("Fed. R. Civ. P."). *See* Docket Entry ("DE") [22]. By way of a
Complaint dated March 7, 2024, Plaintiffs commenced this action against Defendants
John Strobeck, M.D. ("Strobeck"), Integrated Diagnostic Imaging & Cardiology of
Staten Island, P.C. ("Integrated Diagnostic"), Heart Lung Associates Medical, P.C.
("HLA"), JS Marble Medical Care, P.C. ("JS Marble"), JS River Medical Care, P.C.

1

("JS River"), and John Doe Defendants 1-10 (collectively, "Defendants"), alleging claims arising under the Racketeer Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. § 1961 *et seq.*, as well as state law claims for common law fraud and unjust enrichment based upon Defendants' alleged scheme to illegally and fraudulently submit insurance claims to Allstate for reimbursement.  DE [1].

In the instant motion, Plaintiffs seek a default judgment for their common law fraud claims against all Defendants.[1]  DE [22].  Allstate also seeks a declaratory judgment stating that they are not obligated to pay or reimburse Defendants for any outstanding and unpaid claims.  *See* Plaintiffs' Memorandum of Law in Support of Motion for Default Judgment ("Pls.' Mem."), DE [22-1], at 15-18.  For the reasons set forth herein, the Court respectfully recommends that Plaintiffs' motion be granted and that a default judgment be entered as described below.

I.    **BACKGROUND**

    A.    **Relevant Facts**

The following facts are taken from Plaintiffs' Complaint, as well as the declarations submitted in support of the instant motion and are accepted as true. *Gov't Emps. Ins. Co. v. Spectrum Neurology Grp., LLC*, No. 14-CV-5277(ENV)(SMG), 2016 WL 11395017, at *2 (E.D.N.Y. Feb. 17, 2016) (considering the complaint and affidavits submitted in support of motion for default judgment).

---

[1] Plaintiffs do not seek a default judgment with respect to their RICO or unjust enrichment claims. *See* Pls.' Mem. at 1 n.1.

1.    <u>The Parties</u>

Allstate is an insurance company that underwrites "no fault" automobile insurance coverage in New York.  Compl. ¶¶ 22-24, 43.  Strobeck is a New Jersey resident licensed to practice as a physician in New York.  *Id.* at ¶ 25.  Strobeck is an owner of Defendants Integrated Diagnostic, HLA, JS Marble, and JS River (collectively, the "Strobeck PC Defendants").  *Id.* at ¶¶ 26-27.  The Strobeck PC Defendants are each New York professional corporations with principal places of business in New York.  *Id.* at ¶¶ 29-34.  The John Doe Defendants are unlicensed, non-professional individuals or entities who, acting through Strobeck, created the Strobeck PC Defendants as part of a scheme to defraud Allstate.  *Id.* at ¶¶ 4, 6, 9, 28.  Allstate alleges that Strobeck allowed the John Doe Defendants to use his name and medical credentials to form and/or operate the Strobeck PC Defendants as part of a scheme to defraud Allstate through New York's no-fault insurance system.  *Id.* at ¶ 28.

2.    <u>Relevant No-Fault Law and the Fraudulent Scheme</u>

New York's "no fault" insurance laws are designed to ensure "prompt compensation for losses incurred  [in a motor vehicle accident] without regard to fault or negligence," including compensation for medical expenses that "arise out of the use or operation of an insured vehicle."  *State Farm Mut. Auto. Ins. Co. v. Rabiner*, 749 F. Supp. 2d 94, 98-99 (E.D.N.Y. 2010); *see* N.Y. Ins. Law § 5101 *et seq.*  Accordingly, automobile insurance companies, like Allstate, are required to issue up to $50,000 to an insured for necessary health services arising from covered injuries caused in a

motor vehicle accident. *See* N.Y. Ins. Law § 5102(a). For a health service provider to be eligible for payment under the no-fault laws, the provider must comply with applicable licensing requirements. *See* Compl. ¶¶ 58-66; 11 N.Y.C.R.R. § 65-3.11, 3.16(a). Relevant here, these obligations include, among other things, that: (1) licensed medical providers provide the relevant treatment, 11 N.Y.C.R.R. § 65-3.16(a)(12), N.Y. Educ. Law § 6530(19); (2) the physicians providing services are employees of the professional corporation, and not independent contractors, 11 N.Y.C.R.R. § 65-3.11(a); (3) the treatment provided is medically necessary and billed accurately, N.Y. Ins. Law § 403; and (4) the professional corporation not pay "kickbacks" to third parties for the referral of insureds, 8 N.Y.C.R.R. § 29.1.

Allstate alleges that, using Strobeck's name and medical credentials, Strobeck and the John Doe Defendants created the Strobeck PC Defendants strictly to provide services under the guise that the provider was lawfully owned and operated by a qualified medical professional to recover payments pursuant to New York's no-fault insurance law. Compl. ¶¶ 4, 82-93. In reality, Strobeck was simply a "paper" owner of each such entity, and although the Strobeck PC Defendants were formed under his name, unlicensed non-physicians provided the treatment for which Defendants sought reimbursement from Allstate. *Id.* at ¶¶ 6, 82-83. Allstate alleges that these "No-Fault Clinics" were essentially "medical mills" that never developed their own patient base or doctor-patient relationships, but instead, were established for "the sole purpose of submitting inflated, fraudulent billing to Allstate and other insurers." *Id.* at ¶¶ 150-51. Upon providing treatment, the Strobeck PC Defendants, acting

through Strobeck, submitted falsified billing and medical records to Allstate to create the illusion that the services provided were medically necessary and provided by licensed professionals.  *Id.* at ¶¶ 5, 175-89.

To conceal their deceptive conduct, Defendants staggered the creation of the Strobeck PC Defendants.  *Id.* at ¶¶ 7, 76-93.  That is, Defendants would create a professional corporation relying on Strobeck's credentials, submit fraudulent requests for reimbursement to Allstate, and then cease operation of that entity shortly thereafter, only to create a new entity to restart this process.  *Id.*  Although Integrated Diagnostic existed prior to the inception of the fraudulent scheme, it commenced its fraudulent billing practices in approximately July 2021.  *Id.* at ¶¶ 8, 84.  Thereafter, the John Doe Defendants used Strobeck's name and medical credentials to create HLA on September 1, 2021, JS River on March 10, 2022, and JS Marble on March 15, 2022.  *Id.* at ¶ 9.  Allstate alleges that Strobeck was involved with each of these entities as an owner and permitted the use of his name and medical credentials.  *Id.* at ¶¶ 6, 15, 28.

### 3.    Defendants' Fraudulent Billing Practices

Allstate alleges that from July 2021 through the date of the Complaint, Defendants submitted insurance claims to Allstate for non-reimbursable, fraudulent health care claims ostensibly related to the treatment of Allstate no-fault insured patients.  *Id.* at ¶ 4.  Specifically, beginning in July 2021, the Strobeck PC Defendants began billing Allstate almost exclusively for musculoskeletal extracorporeal shockwave treatment ("Shockwave").  *Id.* at ¶¶ 11, 83-99.  Allstate alleges that

Shockwave was unproven, but provided Defendants an opportunity to fraudulently bill surgical rates for a treatment that was more akin to simple physical therapy treatments. *Id.* at ¶¶ 94, 99, 100, 106-14. Plaintiffs further allege that Shockwave was untested and medically unnecessary for the injuries for which insureds sought treatment. *Id.* They further allege that this treatment was provided before other, more conventional methods of treatment were either evaluated or provided. *Id.* Accordingly, Allstate alleges that this treatment was not reimbursable under New York's no-fault laws. *Id.* at ¶¶ 63-66. Once insurers began to scrutinize billings related to Shockwave, Defendants deceptively changed the billing code to correspond to other treatments, although the treatment rendered remained the same. *Id.* at ¶ 12.

In addition to the treatment being medically unnecessary, Allstate further alleges that unlicensed medical professionals, including independent contractors, provided this treatment in contravention of New York's no-fault regulations. *Id.* at ¶¶ 13, 125-29, 159-74. Defendants billed these services provided by unlicensed professionals at the same rate as licensed physicians, resulting in the submission of inflated and inaccurate claims to Allstate. *Id.* at ¶¶ 126-28. Defendants also submitted claims to Allstate in a manner inconsistent with the no-fault requirements, including by charging more than the maximum daily rate for the provision of services and by charging multiple times for a service that should have only been billed once, again resulting in inflated and inaccurate claims. *Id.* at ¶¶ 131-33. Plaintiffs allege that Defendants were aware that the claims they submitted were inaccurate and not

reimbursable, but they submitted them for reimbursement in an effort to defraud Allstate. *Id.* at ¶¶ 175-80. Plaintiffs allege that Defendants "manipulated the NF-3 Claim Forms [submitted to obtain reimbursement] to make it appear that the charges were in conformity" with the applicable no-fee requirements. *Id.* at ¶ 134. To that end, the Form NF-3 states in relevant part:

> Any person who knowingly and with intent to defraud any insurance company or other persons files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime . . . .

*Id.* at ¶ 49; *see* N.Y. Ins. Law § 403(d). Allstate alleges that Defendants submitted over 1,000 fraudulent claims falsely representing that the services for which they sought reimbursement were medically necessary and provided in accordance with New York's no-fault requirements. Compl. ¶ 13.

Allstate alleges that, during the course of their fraudulent scheme, Defendants submitted over $1,115,998.37 in fraudulent claims seeking reimbursement related to "no-fault" treatments. *Id.* at ¶ 4. Of that amount, Allstate made payments totaling $137,731.05 to the Strobeck PC Defendants, which Plaintiffs now seek to recover. *Id.* at ¶ 20. Allstate further seeks a declaratory judgment relieving it of any obligation to pay or reimburse the Strobeck PC Defendants for the remaining $978,267.32 in unpaid and outstanding claims. *Id.* at ¶¶ 21, 329-35.

### B.   **Procedural History**

By way of a Complaint dated March 7, 2024, Plaintiffs commenced this action against all Defendants asserting 19 causes of action, including: (1) common law fraud against Integrated Diagnostic, Strobeck, and the John Doe Defendants; (2) unjust

enrichment against Integrated Diagnostic, Strobeck, and the John Doe Defendants; (3) common law fraud against HLA, Strobeck, and the John Doe Defendants; (4) unjust enrichment against HLA, Strobeck, and the John Doe Defendants; (5) common law fraud against JS Marble, Strobeck, and the John Doe Defendants; (6) unjust enrichment against JS Marble, Strobeck, and the John Doe Defendants; (7) common law fraud against JS River, Strobeck and the John Doe Defendants; (8) unjust enrichment against JS River, Strobeck, and the John Doe Defendants; (9) declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202 against Integrated Diagnostic, HLA, JS Marble, and JS River; and (10) ten separate RICO violations against Strobeck and the John Doe Defendants under both 18 U.S.C. §§ 1962(c) and (d) related to the operations of each of the various Strobeck PC Defendants. DE [1].

On March 22, 2024, Plaintiffs served the Summons and Complaint on Integrated Diagnostic, HLA, and JS Marble. DE [7], [8], [9]. On March 25, 2024, Plaintiffs served the Summons and Complaint on JS River. DE [10]. On April 25, 2024, after other methods of service were unsuccessful, Plaintiffs served Strobeck by affixing a copy of the Summons and Complaint to his door and mailing him a copy of the Summons and Complaint to the same address. DE [20-1]. No Defendant has answered or otherwise responded to the Complaint, and the deadline to do so has expired.

On April 15, 2024, after Defendants failed to respond to the Complaint, Plaintiffs requested that the Clerk of the Court enter a Certificate of Default with respect to Integrated Diagnostic, HLA, and JS Marble. DE [11], [12], [13]. On April

16, 2024, the Clerk of the Court entered Certificates of Default as to those Defendants.  DE [14], [15], [16].  Also on April 16, 2024, Plaintiffs requested that the Clerk of the Court enter a Certificate of Default with respect to JS River, *see* DE [17], which the Clerk of the Court entered on the same day.  DE [18].  On June 3, 2024, Plaintiffs requested that the Clerk of the Court enter a Certificate of Default as to Strobeck, *see* DE [20], which the Clerk of the Court entered on June 4, 2024.  DE [21].

On June 20, 2024, Plaintiffs filed the instant motion, in which they seek a default judgment with respect to their claims against:  (1) Integrated Diagnostic and Strobeck for common law fraud (fifth cause of action), (2) HLA and Strobeck for common law fraud (ninth cause of action), (3) JS Marble and Strobeck for common law fraud (thirteenth cause of action), (4) JS River and Strobeck for common law fraud (seventeenth cause of action), and (5) the Strobeck PC Defendants for declaratory judgment stating that Allstate is not required to make payments on any pending claims (nineteenth cause of action).   DE [22].  On October 9, 2024, Judge Seybert referred Plaintiffs' motion to this Court for a Report and Recommendation. *See* Electronic Order dated October 9, 2024.

## II.    LEGAL STANDARD

Motions for default judgment are governed by Fed. R. Civ. P. 55, which provides for a two-step process.  *See* Fed. R. Civ. P. 55; *Priestley v. Headminder, Inc.*, 647 F.3d 497, 504-05 (2d Cir. 2011).  Initially, the moving party must obtain a certificate of default from the Clerk of the Court.  *See* Fed. R. Civ. P. 55(a).  Once the certificate of default is issued, the moving party may apply for entry of a default

judgment.  *Id.* at 55(b).  Where a default occurs, the well-pleaded factual allegations set forth in a complaint relating to liability are deemed true.  *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 246 (2d Cir. 2004); *see* Fed. R. Civ. P. 8(b)(6) ("An allegation – other than one relating to the amount of damages – is admitted if a responsive pleading is required and the allegation is not denied.").

A plaintiff seeking a default judgment must demonstrate that its "uncontroverted allegations, without more, establish the defendant's liability on each asserted cause of action."  *Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76, 83 (E.D.N.Y. 2012).  In determining whether to grant a motion for default judgment, the court has the "responsibility to ensure that the factual allegations, accepted as true, provide a proper basis for liability and relief."  *Ferrera v. Tire Shop Ctr.*, No. 14-CV-4657(FB)(LB), 2015 WL 3562624, at *2 (E.D.N.Y. Apr. 6, 2015) (Report and Recommendation), *adopted by* 2015 WL 3604078 (E.D.N.Y. June 5, 2015) (internal quotation marks and citation omitted).  Accordingly, prior to entering a default judgment, the court must determine whether the plaintiff's allegations establish the defendant's liability "as a matter of law."  *Bricklayers & Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 187 (2d Cir. 2015).  Once liability has been established, "[t]he court must also determine the amount of damages, actual or statutory, that may be assessed."  *Lyons P'ship, L.P. v. D & L Amusement & Entm't, Inc.*, 702 F. Supp. 2d 104, 111 (E.D.N.Y. 2010).

### III.  DISCUSSION

#### A.  <u>Liability</u>

##### 1.  <u>Common Law Fraud</u>

Plaintiffs seek a default judgment with respect to their claims for common law fraud.  Pls.' Mem. at 9-14.  Under New York law, "to prevail on a claim of fraud, [the plaintiff] must prove five elements by clear and convincing evidence:  (1) a material misrepresentation or omission of fact, (2) made with knowledge of its falsity, (3) with an intent to defraud, and (4) reasonable reliance on the part of the plaintiff, (5) that causes damage to the plaintiff."  *Gov't Emps. Ins. Co. v. Badia*, No. 13-CV-1720(CBA)(VMS), 2015 WL 1258218, at *14 (E.D.N.Y. Mar. 18, 2015) (quoting *Schlaifer Nance & Co. v. Estate of Warhol*, 119 F.3d 91, 98 (2d Cir. 1997)).

In federal court, "fraud must be [pled] with particularity in accordance with Fed. R. Civ. P. 9(b)."  *Allstate Ins. Co. v. Abramov*, No. 16-CV-1465(AMD)(SJB), 2020 WL 1172697, at *10 (E.D.N.Y. Feb. 21, 2020) (Report and Recommendation), *adopted by* 2020 WL 1166498 (E.D.N.Y. Mar. 11, 2020); *see* Fed. R. Civ. P. 9(b).  Therefore, to satisfy the first element of a fraud claim, a plaintiff must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."  *AIU Ins. Co. v. Olmecs Med. Supply, Inc.*, No. 04-CV-2934(ERK), 2005 WL 3710370, at *10 (E.D.N.Y. Feb. 22, 2005); *see Deng v. 278 Gramercy Park Grp. LLC*, No. 12 Civ. 7803(DLC)(JLC), 2014 WL 1016853, at *13 (S.D.N.Y. Mar. 14, 2014) (Report and Recommendation), *adopted by* 2014 WL 4996255 (S.D.N.Y. Oct. 7, 2014)

(applying Fed. R. Civ. P. 9(b) pleading standards in the context of a motion for a default judgment).

Plaintiffs' allegations satisfy Fed. R. Civ. P. 9(b)'s heightened pleading requirements and are sufficient to establish a claim for common law fraud against all Defendants. First, Allstate alleges that Defendants made material misstatements by submitting fraudulent claims to Allstate seeking reimbursement for medical procedures that were either medically unnecessary, did not actually occur, or were otherwise not reimbursable under New York's no-fault laws. Compl. ¶¶ 14, 94-122, 125-29, 181-89. These misrepresentations include the medical necessity of the treatment provided, the nature of the treatment provided, the credentials of the medical provider, and the amount to which the provider was entitled to recover. *Id.* Plaintiffs further allege that certain services were provided by independent contractors as opposed to employees in violation of New York's no-fault insurance law. *Id.* at ¶ 124. Allstate alleges that, by submitting claims for reimbursement on an "NF-3 Claim Form," in which Defendants attested to the truthfulness of the submission and that the claim was reimbursable, Defendants made material misstatements of fact. *Id.* at ¶¶ 125-29, 181-89.

With its Complaint, Allstate submitted a spreadsheet containing a "representative sample of fraudulent charges submitted," including the claim number, the date of the service, a description of the service, and the amount charged. *Id.* at Ex. 1. With the instant motion, Allstate also submitted spreadsheets documenting payments that it made to each of the four Strobeck PC Defendants,

12

including the claim number, the amount paid, and the date of payment. *See* Declaration of Oren Kutnowsky ("Kutnowsky Decl."),[2] DE [22-15], Exs. A-D. Allstate made these payments in reliance on the Strobeck PC Defendants' claims for reimbursement. *Id.* at ¶¶ 7-8.; Compl. ¶¶ 181-89, 230, 260, 290, 320. Courts have held that similar allegations and evidence of fraudulent claims submitted to an insurance provider satisfy Fed. R. Civ. P. 9(b)'s pleading standard and are sufficient to demonstrate that the defendant made materially misleading statements. *See, e.g.*, *Gov't Emps. Ins. Co. v. Davy*, No. 22-CV-6158(HG)(SJB), 2024 WL 4294530, at *6 (E.D.N.Y. Feb. 16, 2024) (holding that the plaintiff alleged a material misstatement of fact based upon spreadsheets describing the defendants' requests for reimbursement, which included the claim number, the date, and the dollar amount claimed); *Gov't Emps. Ins. Co. v. Erlikh*, No. 16-CV-7120(DLI)(SJB), 2019 WL 1487576, at *5 (E.D.N.Y. Feb. 28, 2019) (holding that detailed spreadsheets containing dates, names of service provider, and amount of payment satisfied Fed. R. Civ. P. 9(b)); *Badia*, 2015 WL 1258218, at *15 (holding that allegations of fraud were sufficiently pled based upon a detailed list of "claim submission dates, claim numbers and claim-demand amounts").

Plaintiffs also satisfy the second and third elements of a common law fraud claim by alleging that Defendants submitted the fraudulent claims to Allstate with knowledge of their falsity and with the intent to defraud Allstate. Specifically, Allstate states that Defendants knew they were ineligible for payment of insurance

---

[2] Oren Kutnowsky, an Analyst in Allstate's Special Investigations Unit, declares that he compiled and reviewed these reports and confirms their accuracy. Kutnowsky Decl. ¶¶ 3-8.

funds based on the nature of treatment, the manner in which treatment was provided, and the treatment provider. Compl. ¶¶ 8, 13, 181-89. Nevertheless, Defendants submitted the claims for reimbursement with the intent of defrauding Allstate and receiving insurance payments for which they would otherwise not be entitled to receive. *Id.* at ¶¶ 227, 253, 257, 287, 313, 317. Plaintiffs further allege that, to conceal their fraudulent conduct and avoid detection, Defendants created and terminated each of the Strobeck PC Defendants in quick succession. *Id.* at ¶ 13. These allegations are sufficient to satisfy the knowledge and intent requirements for common law fraud. *See, e.g.*, *Allstate Ins. Co. v. Aminov*, No. 11-CV-2391(MKB), 2014 WL 527834, at *6 (E.D.N.Y. Feb. 7, 2024) (finding fraudulent intent where "the defaulting defendants issued the claim forms with the specific intent to defraud [the plaintiffs] because they knew that the claims contained incorrect and inflated bills for the specific purpose of obtaining payment from [the plaintiffs]"); *Gov't Emps. Ins. Co. v. ALP Supply, Inc.*, No. 22-CV-79(LDH)(MMH), 2023 WL 5846680, at *6 (E.D.N.Y. Sept. 11, 2023) (holding that the defendants had knowledge and intent where they continued to submit fraudulent claims relying on an illegitimate license to practice medicine).

Finally, Plaintiffs allege that, relying on Defendants' fraudulent statements and claims for reimbursement, Allstate made payments to the Strobeck PC Defendants for the fraudulently billed services. Compl. ¶¶ 181-89, 230-31, 260-61, 290-91, 320-21, Ex. 1; *see* Kutnowsky Decl. Exs. A-D. To that end, as described above, Allstate alleges the specific amount paid to each Defendant and provides

14

spreadsheets providing details of the payments.  *See* Kutnowsky Decl. ¶¶ 7-8, Exs. A-D.  Allstate made these payments in reliance on the claims that Defendants submitted.  *Id.*; Compl. ¶¶ 181-89, 230-31, 260-61, 290-91, 320-21.  These allegations are sufficient to satisfy the reliance and damages elements of common law fraud.  *See, e.g.*, *Allstate Ins. Co. v. Williams*, No. 13-CV-2893(RJD)(JO), 2015 WL 5560543, at *4 (E.D.N.Y. Aug. 28, 2015) (Report and Recommendation), *adopted by* 2015 WL 5560546 (E.D.N.Y. Sept. 21, 2015) (holding that the plaintiff alleged common law fraud and observing that "insurers justifiably may rely on claims forms submitted in support of reimbursement"); *Badia*, 2015 WL 1258218, at *16 (holding that the fourth and fifth elements of common law fraud were satisfied based on the plaintiff's reimbursement of fraudulent claims); *Gov't Emps. Ins. Co. v. Scheer*, No. 13-CV-4039(SLT)(SMG), 2014 WL 4966150, at *9 (E.D.N.Y. Aug. 18, 2014) (granting default judgment where the plaintiff alleged that the defendants submitted claims for services that were either not rendered at all or not medically necessary); *Gov't Emps. Ins. Co. v. Damien*, No. 10-CV-5409(SLT)(JMA), 2011 WL 5976071, at *4 (E.D.N.Y. Nov. 3, 2011) (holding that the plaintiffs sufficiently alleged damages on fraud claims by alleging a total amount paid and attaching a list of the claims paid); *State Farm Mut. Auto. Ins. Co. v. Kalika*, No. 04-CV-4631(CBA)(RML), 2007 WL 4326920, at *6 (E.D.N.Y. Dec. 7, 2007) (holding that the plaintiff was injured when it provided reimbursement for unjustified charges).

Accordingly, Plaintiffs allege common law fraud with adequate specificity to satisfy Fed. R. Civ. P. 9(b)'s heightened pleading standard.  Moreover, Allstate's

allegations and evidence satisfy all five elements of a claim for common law fraud and the Court respectfully recommends that a default judgment be entered with respect to Plaintiffs' fifth, ninth, thirteenth, and seventeenth causes of action.

### 2. Declaratory Judgment

Plaintiffs also seek a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202 relieving Allstate of any obligation to pay any outstanding claims submitted by the Strobeck PC Defendants. Compl. ¶¶ 329-35; Pls.' Mem. at 15-18. Plaintiffs allege that, at the time of filing the Complaint, the Strobeck PC Defendants had submitted $978,267.32 in claims that remain unpaid but would arguably be payable absent a declaratory judgment. Compl. ¶¶ 329-35; Kutnowsky Decl. ¶¶ 16-17, Exs. E-H. They further allege that Defendants continue to commence litigation in New York Civil Courts and file arbitrations with the American Arbitration Association seeking payment for no-fault benefits allegedly due and owing. Compl. ¶ 334.

A party seeking a declaratory judgment "must allege that there is a 'substantial controversy, between parties with adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Gov't Emps. Ins. Co. v. Armengol*, No. 20-CV-6052(RPK)(SJB), 2022 WL 432320, at *11 (E.D.N.Y. Jan. 19, 2022) (Report and Recommendation), *adopted in relevant part by* 2022 WL 426163 (E.D.N.Y. Feb. 11, 2022) (quoting *Niagara Mohawk Power Corp. v. Tonawanda Band of Seneca Indians*, 94 F.3d 747, 752 (2d Cir. 1996)); *Am. Transit Ins. Co. v. Bilyk*, 514 F. Supp. 3d 463, 475 (E.D.N.Y. 2021) ("A court may issue a declaratory judgment only where the moving party has established the existence of

an actual case or controversy.") (citing 28 U.S.C. § 2201(a)). Declaratory relief is appropriate: "(1) where the judgment will serve a useful purpose in clarifying and settling the legal relations in issue; or (2) when it will terminate and afford relief from the uncertainty, insecurity and controversy giving rise to the proceedings." *Williams*, 2015 WL 5560543, at *6 (quoting *Md. Cas. Co. v. Rosen*, 445 F.2d 1012, 1014 (2d Cir. 1971)). The Court "has broad discretion to decide whether to render a declaratory judgment." *Id.* Relevant here, "[c]ourts within this district have, on numerous occasions, found these requirements met in actions by insurers seeking declaratory judgments regarding obligations relating to allegedly fraudulent claims." *Gov't Emps. Ins. Co. v. Jacques*, No. 14-CV-5299(KAM)(VMS), 2017 WL 9487191, at *9 (E.D.N.Y. Feb. 13, 2017) (Report and Recommendation), *adopted by* 2017 WL 1214460 (E.D.N.Y. Mar. 31, 2017).

Plaintiffs allege that the Strobeck PC Defendants have submitted fraudulent bills to Allstate that remain unpaid and are in dispute. Compl. ¶¶ 329-35; Kutnowsky Decl. ¶¶ 16-17, Exs. E-H. They further allege that the Strobeck PC Defendants "continue to challenge Allstate's prior denials of its claims," and that they "continue to commence litigation in New York Civil Courts, as well as continue to file arbitrations . . . against Allstate, seeking payment for No-Fault Benefits allegedly due and owing." Compl. ¶¶ 333-34. To that end, Plaintiffs have submitted a chart of pending claims, as well as examples of arbitration records related to fraudulently filed claims. *See* Kutnowsky Decl. Exs. E-H; Declaration of Komal Keluskar ("Keluskar Decl."), DE [22-2], Exs. 16-17. As these allegations demonstrate that

Plaintiffs are still subject to potential liability and financial obligations in the form of insurance payments due to Defendants' fraudulent conduct, they are sufficient to demonstrate that a real case and controversy exists and that Allstate is entitled to a declaratory judgment against the Strobeck PC Defendants.  *See Bilyk*, 514 F. Supp. 3d at 476 (granting a declaratory judgment where the "defendants' pending, unpaid claims [were] part of a fraudulent scheme to submit inflated claims"); *Williams*, 2015 WL 5560543, at *6 (granting declaratory judgment based on pending claims and the plaintiff's compliance with New York's no-fault insurance law).

Therefore, the Court respectfully recommends that a declaratory judgment be entered with respect to Plaintiffs' nineteenth cause of action declaring that Allstate is not required to pay any outstanding claims submitted by the Strobeck PC Defendants.

### 3.    Joint and Several Liability

Finally, Plaintiffs seek to hold Strobeck jointly and severally liable with each of the Strobeck PC Defendants. Pls.' Mem. at 14-15.  Allstate does not seek to hold the Strobeck PC Defendants jointly and severally liable among one another.  *Id.*; *see* Proposed Judgement, DE [22-3] (seeking joint and severally liability only with Strobeck).  Under New York law, "where defendants acted jointly and/or concurrently to produce a single injury, those defendants must be held jointly and severally liable for all of the harm resulting from their actions."  *Gov't Emps. Ins. Co. v. Infinity Health Prods., Ltd.*, No. 10-CV-5611(JG)(JMA), 2012 WL 1427796, at *10 (E.D.N.Y.

Apr. 6, 2012) (Report and Recommendation), *adopted by* 2012 WL 1432213 (E.D.N.Y. Apr. 25, 2012).

Plaintiffs' allegations are sufficient to establish joint and several liability between Strobeck and each of the Strobeck PC Defendants.  Plaintiffs allege that, acting under Strobeck's instruction and relying upon his medical licensing and credentials, each of the Strobeck PC Defendants submitted fraudulent claims for reimbursement to Allstate, which Allstate paid.  Compl. ¶¶ 191-98, Ex. 1; Kutnowsky Decl. Exs. A-D.  Although the amounts paid to each of the Strobeck PC Defendants are allocable, Strobeck is a common thread among them and coordinated the fraudulent conduct.  Compl. ¶¶ 76-93, 228, 258, 288, 318.  Courts in this District have held that similar allegations are sufficient to impose joint and several liability on an individual defendant.  *See, e.g.*, *Armengol*, 2022 WL 432320, at *8 (holding the individual defendant jointly and severally liable, but not the corporate entity defendants); *Gov't Emps. Ins. Co. v. Parkway Med. Care, P.C.*, No. 15-CV-3670(FB)(VMS), 2017 WL 1133282, at *15 (E.D.N.Y. Feb. 21, 2017) (Report and Recommendation), *adopted by* 2017 WL 1131901 (E.D.N.Y. Mar. 24, 2017) (imposing joint and several liability for an individual and various entities, but declining to impose joint and several liability among the entity defendants where the plaintiff did not allege that they "acted jointly with one another" as each entity "filed its own fraudulent claims").  Accordingly, the Court respectfully recommends that Strobeck

be held jointly and severally liable with each of the Strobeck PC Defendants, but that the Strobeck PC Defendants not be jointly and severally liable among themselves.[3]

## B.    **Damages**

Once liability is established, the court must ascertain damages with "reasonable certainty." *Hosking v. New World Mortg., Inc.*, 570 F. App'x 28, 31 (2d Cir. 2014); *Team Air Express, Inc. v. A. Heffco Techs., Inc.*, No. 06-CV-2742(NG)(CLP), 2008 WL 3165892, at *3 (E.D.N.Y. Aug. 6, 2008) (Report and Recommendation), *adopted by* 2008 WL 4790460 (E.D.N.Y. Oct. 28, 2008) ("While a party's default is deemed to constitute a concession of all well-pleaded allegations of liability, it is not considered an admission of damages.") (internal quotation marks and citation omitted).    Accordingly, the Court must assess whether Plaintiffs have produced sufficient evidence of the damages they seek.    *See Gutman v. Klein*, No. 03-CV-1570(BMC)(RML), 2010 WL 4975593, at *1 (E.D.N.Y. Aug. 19, 2010) (Report and Recommendation), *adopted by* 2010 WL 4916722 (E.D.N.Y. Nov. 24, 2010).

The Court has discretion to determine whether an evidentiary hearing is necessary to determine damages not susceptible of simple mathematical calculation. *See* Fed. R. Civ. P. 55(b)(2); *In re Crazy Eddie Sec. Litig.*, 948 F. Supp. 1154, 1160 (E.D.N.Y. 1995) (citations omitted).    "The moving party bears the burden of providing a reasonable basis for determination of damages and should not be awarded damages if the evidence is not adequate." *Id.* (citing *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981)); *Sullivan v. Marble Unique Corp.*, No. 10-CV-3582(NGG)(LB),

---

[3] Plaintiffs' proposed judgment acknowledges that only Strobeck should be jointly and severally liable. DE [22-3].

2011 WL 5401987, at *2 (E.D.N.Y. Aug. 30, 2011) (Report and Recommendation), *adopted by* 2011 WL 5402898 (E.D.N.Y. Nov. 4, 2011) ("On a motion for default judgment, a plaintiff has the burden to prove damages to the Court with a 'reasonable certainty.'").

Plaintiffs seek to recover a total of $137,731.05 in compensatory damages for amounts it has actually paid because of Defendants' fraudulent conduct, including: (1) $34,278.77 paid to Integrated Diagnostic; (2) $91,200.40 paid to HLA; (3) $7,211.91 paid to JS Marble; and (4) $5,039.97 paid to JS River. *See* Total Judgments, DE [22-17]; Kutnowsky Decl. ¶ 7, Exs. A-D. As described above, Allstate seeks to hold Strobeck jointly and severally liable for these amounts.

### 1. Damages for Common Law Fraud

In New York, "the default remedy for common law fraud is an award of compensatory damages." *Allstate Ins. Co. v. Afanasyev*, No. 12-CV-2423(JBW)(CLP), 2016 WL 1156769, at *12 (E.D.N.Y. Feb. 11, 2016) (Report and Recommendation), *adopted by* 2016 WL 1189284 (E.D.N.Y. Mar. 22, 2016); *see Matana v. Merkin*, 989 F. Supp. 2d 313, 321 (S.D.N.Y. 2013) ("[D]amages for fraud are to be calculated to compensate plaintiffs for what they lost because of the fraud . . . .") (internal quotation omitted). Therefore, "[t]he general rule of fraud damages is that the defrauded plaintiff may recover out-of-pocket loses caused by the fraud." *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 768 (2d Cir. 1994).

In support of their claim for damages, Plaintiffs submitted spreadsheets identifying the fraudulent transactions, including the claim number, date, and

amount paid to each of the Strobeck PC Defendants.  Kutnowsky Decl. Exs. A-D.[4] Having compared the amounts that Plaintiffs seek from each of the Strobeck PC Defendants to the spreadsheets reflecting payments made, as well as considering the remainder of the Kutnowsky Declaration, the Court is satisfied that Allstate is entitled to recover the amounts it seeks in compensatory damages.  *See Erlikh*, 2019 WL 1487576, at *9 (granting a default judgment and determining damages based on spreadsheets reflecting payments made to medical providers); *Scheer*, 2014 WL 4966150, at *11 (awarding damages based upon a declaration from the defendant's claims manager with supporting documentation of fraudulent claims).  Accordingly, the Court respectfully recommends that a judgment for compensatory damages be entered against:  (1) Strobeck and Integrated Diagnostic, jointly and severally, in the amount of $34,278.77; (2) Strobeck and HLA, jointly and severally, in the amount of $91,200.40; (3) Strobeck and JS Marble, jointly and severally, in the amount of $7,211.91; and (4) Strobeck and JS River, jointly and severally, in the amount of $5,039.97, for an overall total of $137,731.05.

2.  <u>Prejudgment Interest</u>

Plaintiffs also seek an award of prejudgment interest.  Pls.' Mem. at 15. Prejudgment interest is mandatory on damages awarded for fraud.  *Gov't Emps. Ins. Co. v. Elmwood Park Med. Grp., P.C.*, No, 21-CV-617(FB)(RER), 2022 WL 772737, at *11 (E.D.N.Y. Feb. 23, 2022) (citing *Parkway Med. Care, P.C.*, 2017 WL 1133282, at

---

[4] Kutnowsky, an analyst in the Special Investigations Unit at Allstate, searched Allstate's computer database to compile a comprehensive list of payments that Allstate made based on claims submitted by or on behalf of the Strobeck PC Defendants and has confirmed their accuracy.  Kutnowsky Decl. ¶ 3.

*17).  "Prejudgment interest in New York accrues at the rate of nine percent per year." *Gov't Emps. Ins. Co. v. Surplus SG, Inc.*, No. 24-CV-1903(NCM)(LKE), 2024 WL 4448811, at *7 (E.D.N.Y. Oct. 9, 2024) (citing N.Y. C.P.L.R. 5004(a)).  Courts in this District have held that prejudgment interest is properly calculated beginning on January 1 of the year following when the claim was submitted.  *See, e.g.*, *Afanasyev*, 2016 WL 1156769, at *12; *Aminov*, 2014 WL 527834, at *10 ("For example, if a fraudulent claim was submitted in 2009, . . . interest on that claim [accrues] from January 1, 2010.").

Plaintiffs propose calculating prejudgment interest beginning "the first day of the year following the date of Allstate's payment to the relevant Defaulting PC Defendant," *see* Pls.' Mem. at 15, which is consistent with how courts in this District calculate prejudgment interest.  *See Afanasyev*, 2016 WL 1156769, at *12; *Aminov*, 2014 WL 527834, at *10.  Plaintiffs' records reflect that Allstate made its first payments to Integrated Diagnostic and HLA in 2021, and to JS Marble and JS River in 2022.  Kutnowsky Decl. Exs. A-D.  Therefore, prejudgment interest begins to accrue on January 1, 2022 for Integrated Diagnostic's and HLA's compensatory damages, and on January 1, 2023 for JS Marble's and JS River's compensatory damages. As shown in the chart below, applying the 9% statutory rate to the damages described above, as well as the duration of accrual, the Court respectfully recommends that Allstate be awarded prejudgment interest in the amount of:  (1) $9,134.45 from Strobeck and Integrated Diagnostic, jointly and severally; (2) $24,311.69 from Strobeck and HLA, jointly and severally; (3) $1,274.48 from Strobeck

23

and JS Marble, jointly and severally; and (4) $887.84 from Strobeck and JS River, jointly and severally.[5]  The Court further recommends that these amounts continue to accrue at the per diem rate identified in the table below until the date on which judgment is entered.

| Defendant | Damages | Interest Accrual Date | Per Diem Accrual Rate | Days Between Accrual and R&R | Total Interest |
|---|---|---|---|---|---|
| Integrated Diagnostic | $34,278.77 | January 1, 2022 | $8.45 | 1,081 | $9,134.45 |
| HLA | $91,200.40 | January 1, 2022 | $22.49 | 1,081 | $24,311.69 |
| JS Marble | $7,211.91 | January 1, 2023 | $1.78 | 716 | $1,274.48 |
| JS River | $5,039.97 | January 1, 2023 | $1.24 | 716 | $887.84 |

3.  Post-Judgment Interest

Pursuant to 28 U.S.C. § 1961(a), "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court . . . calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield . . . for the calendar week preceding the date of the judgment."  An award of post-judgment interest at the statutorily prescribed rate is mandatory. *See Schipani v. McLeod*, 541 F.3d 158, 156 (2d Cir. 2008).  Therefore, the Court respectfully recommends that Plaintiffs be awarded post-judgment interest calculated from the date on which judgment is entered until the date on which judgment is paid, using the federal rate set forth in 28 U.S.C. § 1961.

---

[5] Plaintiffs' prejudgment interest spreadsheet appears to be inconsistent with the calculation method they propose and how prejudgment interest is calculated.  *See* DE [22-16].  For example, despite acknowledging that interest begins to accrue in the year following the submission of a fraudulent claim, Plaintiffs begin calculating prejudgment interest in the same year for each of the Strobeck PC Defendants.  Therefore, the Court relies on its calculation in the chart above to calculate prejudgment interest.

### C.    **Treatment of Remaining Claims**

As described above, Plaintiffs do not move for a default judgment with respect to their RICO claims or state law unjust enrichment claims on the grounds that the damages they seek would be duplicative of their common law fraud claims.  Pls.' Mem. at 1 n.1.  Although the Court interprets this to mean that they intend to abandon these claims, Allstate has not affirmatively stated so or filed a notice of discontinuance.    For the sake of complete resolution, the Court respectfully recommends that, upon entry of judgment with respect to Plaintiffs' claims for common law fraud, Plaintiffs be instructed to file a notice of discontinuance with respect to their RICO and unjust enrichment claims, or that the Court deem them abandoned.

## IV.    CONCLUSION

For the reasons set forth herein, the Court respectfully recommends that Plaintiffs' motion for default judgment with respect to its claims for common law fraud (Counts 5, 9, 13, and 17) and for a declaratory judgment (Count 19) be granted. The Court respectfully recommends that Plaintiffs be awarded damages in the amount of:  (1) $43,413.22 against Strobeck and Integrated Diagnostic, jointly and severally, with prejudgment interest accruing at a rate of $8.45 per day until judgment is entered; (2) $115,512.09 against Strobeck and HLA, jointly and severally, with prejudgment interest accruing at a rate of $22.49 per day until judgment is entered; (3) $8,486.39 against Strobeck and JS Marble, jointly and severally, with prejudgment interest accruing at a rate of $1.78 per day until judgment is entered;

and (4) \$5,927.81 against Strobeck and JS River, jointly and severally, with prejudgment interest accruing at a rate of \$1.24 per day until judgment is entered. The Court further recommends that post-judgment interest be awarded in accordance with 28 U.S.C. § 1961. Finally, the Court respectfully recommends that Plaintiffs be instructed to file a notice of discontinuance with respect to their RICO and unjust enrichment claims or, in the absence of a notice of dismissal, deem those claims as abandoned.

## V.   OBJECTIONS

A copy of this Report and Recommendation is being served on Plaintiffs by electronic filing on the date below. Plaintiffs are directed to serve a copy of it on Defendants via first-class mail and promptly file proof of service by ECF. Any objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen days. *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72; Fed. R. Civ. P. 6(a) and 6(d). Failure to file objections within this period waives the right to appeal the District Court's Order. *See Ferrer v. Woliver*, No. 05-CV-3696, 2008 WL 4951035, at *2 (2d Cir. Nov. 20, 2008); *Beverly v. Walker*, 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).


Dated:      Central Islip, New York
            December 17, 2024

                                   /s/ Steven I. Locke
                                   STEVEN I. LOCKE
                                   United States Magistrate Judge